IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MURIEL E. F.,[1]                    )
                                    )
                Plaintiff,          )
                                    )
vs.                                 )    Case No. 18-cv-1373-DGW[2]
                                    )
COMMISSIONER of SOCIAL              )
SECURITY,                           )
                                    )
                Defendant.          )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for DIB in October 2014, alleging disability as of October 12, 2013. After holding an evidentiary hearing, Administrative Law Judge (ALJ) Lisa Leslie denied the application on July 25, 2017. (Tr. 31-40). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 8, 27.

Plaintiff raises the following points:

1. The ALJ did not adhere to SSR 96-8p when she ignored evidence in her conclusion.

2. The ALJ did not adhere to 20 C.F.R. § 416.927 when she failed to accord adequate weight to the opinions of medical professionals.

3. The ALJ did not adhere to SSR 16-3p when she failed properly assess claimant's subjective allegations.

4. The Appeals Council erred in rejecting additional evidence submitted by plaintiff because the evidence was relevant and material.

## <u>Applicable Legal Standards</u>

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the

plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Ibid.*

## The Decision of the ALJ

ALJ Leslie followed the five-step analytical framework described above. She determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of sciatica/sacroiliitis/bursitis/disc degeneration lumbar and cervical spine, obesity, mild medial compartmental osteoarthritis of right knee, tennis elbow, and sensory peripheral neuropathy.

The ALJ found that plaintiff had the RFC to perform work at the light exertional level, limited to no climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; occasional stooping, crouching, crawling, and kneeling; and frequent handling and fingering bilaterally. Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff was able to do her past work, which was sedentary, while also making an alternative finding that she was able to do other jobs at the light exertional level which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

### 1. Agency Forms

Plaintiff was born in 1964 and was almost 50 years old on the alleged onset date. Her reported height was 5'1" and her reported weight was 210 pounds. (Tr. 478). She previously worked as a payroll clerk, bank teller, and accounts payable clerk. (Tr. 61). Plaintiff submitted a function report in February 2015 stating that she experienced pain when sitting and standing for any length of time, with her back and legs hurting continuously. She reported that she had a higher incidence of falls after sitting for a few hours due to stiffness and pain. (Tr. 622). She said she couldn't lift any amount over 10 pounds and that squatting and bending also caused pain in her back and legs. (Tr. 627). She also complained that she woke up 2 to 3 times a night due to pain and sometimes needed help dressing. (Tr. 623). She did acknowledge driving, shopping for groceries, preparing simple meals, cleaning, and taking care of her dogs. (Tr. 623-625).

### 2. Evidentiary Hearing

At the evidentiary hearing, plaintiff reported that she was married. (Tr. 51). She was prescribed gabapentin, which helped reduce pain some of her pain, but also made her drowsy. (Tr. 52, 56). Plaintiff stated she had very sharp, constant pain in her lower back, buttocks, and down to her legs to her toes. (Tr. 53, 54-55). She also reported that her hands and wrists hurt, which affected her grip strength, and her neck was always stiff and sore. She additionally had problems with fine manipulation. (Tr. 53). She then stated that she probably had 10 to 12 good days, where she experienced a reduction in symptoms, in a month. She explained that her bad days left her incapacitated, staying in a flat or reclined position. (Tr.

54, 55).   She noted that on good days, she could grocery shop and walk her dog. (Tr. 55-56).

A VE also testified.   As there is no issue as to her testimony, it will not be summarized.

### 3.    Medical Records

In 2013 and 2014, plaintiff saw Dr. Joseph Eickmeyer, her primary care physician.   In 2013, Dr. Eickmeyer diagnosed her with joint pain, acid reflux disease, and a left ankle sprain.   He noted plaintiff's associated joint stiffness and joint swelling; and that the joint pain had been a problem for the past one to two days, affecting her right elbow, left ankle, and the toes of her right foot.   (Tr. 709, 711).   In 2014, Eickmeyer observed that plaintiff had right elbow pain radiating to the upper arm and forearm with numbness and arm weakness.   He also stated that plaintiff had chronic low back pain, most prominently in the lumbar spine and sacroiliac area, with stiffness and weakness in the legs.   Plaintiff's medical history revealed a previous bilateral carpal tunnel release, two lumbar surgeries, and spinal surgeries, specifically laminectomies of the cervical region in 1995, 2000, and 2007; and a cervical fusion in 1998 and 2000.   One of the lumbar surgeries was a fusion by Dr. Michael Chabot.   (Tr. 683, 686, 689, 733, 737, 755, 763, 888).[3]

Plaintiff saw Dr. Chabot in 2013.   (Tr. 733).   Dr. Chabot ordered x-rays of the lumbar spine, which revealed evidence of a prior spinal fusion at the L4 to L5,

[3] According to the record, plaintiff's cervical fusion in 2000 occurred after her involvement in a vehicle collision.   (Tr. 888).   There is also some uncertainty from the record regarding whether she received a lumbar fusion in both 2010 and 2012, or if she just had one lumbar fusion in that time frame.   (Tr. 728, 750).

minimal disc space narrowing, and facet sclerosis. Dr. Chabot diagnosed plaintiff with sciatica, sacroiliitis, disc degeneration, obesity, greater trochanter bursitis, IT band syndrome, and calf tendinitis. Dr. Chabot gave plaintiff injections, continued her on an anti-inflammatory, and prescribed Ultram for pain control. (Tr. 733-736). Later in October 2013, Dr. Chabot ordered an MRI of the lumbar region of the spine, which showed "circumferential disc bulge with adjacent edematous Modic one endplate changes at L5-S1 resulting in bilateral foraminal stenosis but not central canal stenosis." (Tr. 744-747).

Dr. Chabot referred plaintiff to Dr. Anne Christopher in 2014 to address her pain. Dr. Christopher noted that plaintiff had been through several falls related to weakness in her legs and reported plaintiff's chief complaint at the time as her posterior hip. Dr. Christopher stated that plaintiff had been taking Zanaflex, and she additionally scheduled injections and encouraged continuation of physical therapy. (Tr. 754-757). Plaintiff later reported completing physical therapy in 2015 with no reduction in pain. (Tr. 872). In January 2015, Dr. Christopher observed new right sided knee pain, but also improvement in plaintiff's low back pain. Dr. Christopher scheduled medial branch blocks at the L4, L5, and S1 segments of the spine to treat plaintiff's continuing pain. (Tr. 749-752). Dr. Christopher also ordered an x-ray of the right knee, which revealed mild narrowing of the medial joint space consistent with osteoarthritis. (Tr. 759).

Plaintiff began seeing Dr. Jawad Khan as her primary care physician. (Tr. 796, 872). She had MRIs in June 2015. The MRI of her lumbar spine showed mild spondylosis at the L5 to S1 with small disc protrusion, mild foraminal

narrowing, and moderate facet joint degenerative changes. The MRI of her cervical spine revealed mild spondylosis and canal narrowing, midline central disc herniation, central disc protrusion, and mild foraminal stenosis. (Tr. 876). In January 2016, plaintiff was determined to be a candidate for a spinal cord stimulator implant. Plaintiff complained of knifelike lower lumbar pain radiating into her legs with bilateral pins and needles sensations in her feet. (Tr. 872). Plaintiff first received an implanted trial stimulator. Then, in June 2016, another, more permanent, spinal cord stimulator was inserted into her back. (Tr. 894-895). Plaintiff eventually reported a 50 percent reduction in her symptoms from the stimulator, but also stated that with activity, her pain increased to an 8 out of 10. (Tr. 910). A nerve root block was then performed to address her radicular right leg symptoms. (Tr. 910). Dr. Khan also listed rheumatoid arthritis as an active diagnosis for plaintiff. (Tr. 796, 904).[4]

In March 2015, state medical examiner Dr. Julio Pardo assessed plaintiff's RFC based on a review of the file materials. Dr. Pardo found that plaintiff had the unrestricted ability to balance; climb ramps, stairs, ladders, ropes, and scaffolds; and could frequently stoop, kneel, crouch, and crawl. Dr. Pardo also opined that plaintiff was restricted from lifting more than 20 pounds; standing or walking for more than six hours total in a work day; and sitting for more than six hours total in a work day. (Tr. 482-483). Dr. Pardo concluded that plaintiff was not disabled and could perform the functions of occupations that require light work. (Tr. 485).

---

[4] Plaintiff saw a rheumatologist, Dr. Kimberly Carroll, in February and March of 2016. Dr. Carroll appeared to be skeptical of an RA diagnosis, but never completely discounted it as a possibility. (Tr. 810-827). Sonography of plaintiff's hands ordered by Dr. Carroll show mild to moderate synovitis of the proximal and mid compartments of both wrists. (Tr. 828).

In August 2015, acting as a state agency consultant, Dr. Richard Alley also assessed plaintiff's RFC based on a review of the file contents and largely agreed with Dr. Pardo's assessment.  (Tr. 500, 505).

Plaintiff also saw Dr. Adrian Feinerman for a consultative exam and x-rays in June 2015.  Dr. Feinerman found that plaintiff was able to sit, stand, walk, lift, carry, and handle objects.  He also stated that there was no anatomic deformity of the cervical, thoracic, or lumbar spine, and no limitation of motion of any spinal segment or joint.  (Tr. 768-769).  He also found that ambulation was normal and plaintiff could ambulate 50 feet.  (Tr. 769).

In April 2016, plaintiff underwent a functional capacity examination.  The examination demonstrated plaintiff had the ability to lift 20 pounds, but increased pain and poor body mechanics limited that ability.  Testing further demonstrated her inability to sustain simulated work activities, such as sitting, typing, and seated reaching, to complete a full work day.  The examination concluded that she would not be able to work full time at any exertional level.  (Tr. 799).

In October 2016, based on her lower extremity numbness, plaintiff had an electrophysiologic evaluation performed by neurologist Dr. Stephen Burger.[5]  The evaluation found sensory peripheral neuropathy of both lower extremities. Additionally, Dr. Burger observed diminished amplitude in the posterior tibial motor responses.  (Tr. 830).

---

[5] The procedure involves an electromyogram assessment utilizing a monopolar needle electrode to record the electrical activity of muscles.
http://www.mayoclinic.org/tests-procedures/emg/about/pac-20393913 (last visited on April 4, 2019).

**<u>Analysis</u>**

Plaintiff argues that ALJ Leslie ignored evidence in her RFC findings that would undermine her conclusion. While plaintiff's accusation that the ALJ did not mention her spinal cord stimulator is unquestionably inaccurate, other facets of plaintiff's argument sufficiently hit their mark. In assessing a plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). While the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings. *Ibid.* (citing *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001) and *Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001)). Otherwise, it is impossible for a reviewing court to make an informed review. *Golembiewski,* 322 F.3d at 917 (citing *Smith v. Apfel,* 231 F.3d 433, 438 (7th Cir. 2000)).

First, the ALJ ignored, in some cases, and glossed over, in other cases, significant surgical history. Plaintiff's medical history revealed a previous bilateral carpal tunnel release, which the ALJ did not mention in her decision. More importantly, plaintiff also had two lumbar surgeries, which the ALJ also did not mention at all. One of those surgeries was a fusion. On top of that, plaintiff had three laminectomies of the cervical region and two cervical fusions, which were only mentioned in one sentence in her entire decision. (Tr. 37).

Second, the ALJ misrepresented imaging evidence in her decision. Regarding plaintiff's MRI in October 2013, the ALJ stated that "[m]agnetic resonance imaging later that year revealed nothing too different from what the

x-rays revealed," however, the x-ray she referred to did not show a circumferential disc bulge or bilateral foraminal stenosis found in the MRI. While the ALJ did refer to a later 2015 MRI in detail in her decision that did show these issues, she nonetheless misrepresented important evidence.

Third, the ALJ ignored treatment evidence in her decision. In October 2016, plaintiff received an electrophysiologic evaluation from Dr. Stephen Burger on what looks like a recommendation from a treating physician. The ALJ's decision fails to mention the exam or its results.

Looked at singularly, these pieces of evidence are likely not fatal. However, when the evidence is looked at together, a pattern does emerge. It appears that the ALJ left some evidence out that corroborated plaintiff's claims to increase the plausibility of her conclusion. This Circuit has rejected that approach. See, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

Plaintiff's second argument regarding the incorrect analysis of medical opinions also works. In April 2016, plaintiff underwent a functional capacity examination. In her decision, the ALJ focused on plaintiff's typing test, stating that it should be disregarded because of plaintiff's ability to cheat the test. The ALJ also discussed plaintiff's posture during the exam, stating that plaintiff could have switched positions frequently to make it look like her symptoms were severe, or, she pondered, the chair may not have been ergonomically situated for postural comfort. (Tr. 38). This entire block of analysis is speculative and does not pass muster for even nontreating medical opinion requirements. See, *Simila*, 573 F.3d at 515. Furthermore, the ALJ dismissed the exam because it conflicted with the

"negligible" results from other functional exams.    However, as the ALJ noted in her decision, plaintiff was found to have a limited range of motion, decreased lower extremity sensation, and chronic pain in an exam by Dr. Anderson, who then noted that plaintiff was scheduled for a spinal cord stimulator trial.   (Tr. 36).

The mischaracterization and lack of consideration of evidence requires remand.   "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required."   *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).[6]

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled, or that she should be awarded benefits.   On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

---

[6] Plaintiff also argues that the ALJ improperly weighed her credibility related to her limitations. Because remand is required based on the medical evidence, reconsideration of plaintiff's credibility will require a fresh look.   Therefore, consideration of this issue is rendered unnecessary at this time.   Furthermore, remand requires reconsideration of all evidence, including evidence that was previously rejected be the Appeals Council in this case.   Therefore, consideration of that issue is also rendered unnecessary at this time.

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   April 29, 2019.**

**DONALD G. WILKERSON**
**UNITED STATES MAGISTRATE JUDGE**